IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MORRIS EARNEST CARROLL, JR.     :
and EMILY DIANE CARROLL,        :
                                :
     Plaintiffs,                :
                                :
vs.                             :     CIVIL ACTION 04-0342-P-M
                                :
JAMES TAYLOR, JOHN GREENE,      :
and TRACEY HAWSEY,              :
                                :
     Defendants.                :


REPORT AND RECOMMENDATION

     The following motions have been referred for report and
recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule
72.2:  Defendants Taylor and Greene's Motion for Partial
Dismissal of Plaintiffs' Amended Complaint (Docs. 45-46),
Defendant Hawsey's Motion to Dismiss Plaintiffs' Amended
Complaint (Docs. 47-48), Defendants' Motion to Strike
Plaintiffs' Filing of Deposition Transcripts (Docs. 74-75),
and Plaintiffs' Motion for Leave to File Deposition
Transcripts (Doc. 82).  Jurisdiction has been invoked in this
Court under 28 U.S.C. § 1331 pursuant to 42 U.S.C. § 1983.
After consideration, it is recommended that:  Defendants
Taylor and Greene's Motion for Partial Dismissal of
Plaintiffs' Amended Complaint (Docs. 45-46) be granted,
Defendant Hawsey's Motion to Dismiss Plaintiffs' Amended

Complaint (Docs. 47-48) be granted in part and denied in part, Defendants' Motion to Strike Plaintiffs' Filing of Deposition Transcripts (Docs. 74-75) be granted, and Plaintiffs' Motion for Leave to File Deposition Transcripts (Doc. 82) be denied.

The facts are, briefly, as follows.  Plaintiffs Morris and Diane Carroll, who are both White, were attending a high school basketball game in Conecuh County, Alabama on January 16, 2004 (Doc. 36, ¶¶ 6-8).  Plaintiffs allege that Defendant John Greene, a Black male, forcibly removed Diane Carroll from the gymnasium stands and took her to James Taylor, also a Black male, who was waiting on the gym floor (*id.* at ¶ 7); Greene and Taylor were both deputies of the Conecuh County Sheriff's Department (*id.* at ¶¶ 3-4).  An altercation ensued which resulted in injuries to Plaintiffs by Greene and Taylor which required hospitalization (*id.* at ¶¶ 8-11, 14-16). Plaintiffs were arrested and charged (Doc. 46, Exhibits A, B).[1]  Defendant Tracey Hawsey is Sheriff of Conecuh County and the supervisor of Greene and Taylor (Doc. 36, ¶ 5).

---

[1]Exhibit A is a "Case Action Summary of *State of Alabama v. Morris Ernest Carroll, Jr.*, DC-04-54;" Exhibit B is a "Case Action Summary of *State of Alabama v. Emily England Diane Carroll*, DC-04-53" (Doc. 46).
   The Court notes that the Eleventh Circuit Court of Appeals, in *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999), held that a district court may take judicial notice of relevant public documents in considering a motion to dismiss.

Plaintiffs subsequently filed this action on May 27, 2004 (Doc. 1).  On September 2, 2004, Plaintiffs filed an amended complaint in which four causes of action were asserted (Doc. 36).  The first cause of action is brought against Defendants Taylor, Greene, and Hawsey who "violated the constitutional and/or statutory rights afforded the Plaintiffs under the Fourteenth Amendment and/or 42 U.S.C. § 1983 and/or 42 U.S.C. § 1981(a)" in using excessive force in removing Plaintiffs from the school gymnasium (*id.* at ¶¶ 24-28).  The second cause of action is against all Defendants for State claims of assault and battery (*id.* at ¶¶ 31-33).  The third cause of action is against Hawsey for the negligent supervision of Taylor and Greene (*id.* at ¶¶ 35-41).  The fourth cause of action is against all Defendants for conspiracy in bringing false charges against Morris Carroll (*id.* at ¶¶ 43-44).

Defendants Taylor and Greene have filed a Motion for Partial Dismissal of Plaintiffs' Amended Complaint (Docs. 45-46); Plaintiffs have filed a Response (Doc. 70) to which Defendants have Replied (Doc. 80).  Defendant Hawsey also filed a Motion to Dismiss Plaintiffs' Amended Complaint (Docs. 47-48); Plaintiffs have filed a Response (Doc. 71) to which Hawsey has Replied (Doc. 77).  Defendants have also all filed a Motion to Strike Plaintiffs' Filing of Deposition

Transcripts (Docs. 74-75); Plaintiffs have filed a Motion for
Leave to File Deposition Transcripts (Doc. 82) to which
Defendants have filed a Response (Doc. 83).

The Court will first consider the motions regarding the
deposition transcripts.  Plaintiffs have proffered the
deposition testimony of Defendants Taylor (Doc. 72) and Greene
(Doc. 73) as support for their argument that this action
should not be dismissed (Doc. 82).

The Court notes that the Eleventh Circuit Court of
Appeals has held that "[c]onsideration of matters beyond the
complaint is improper in the context of a motion to dismiss
but proper in the context of a motion for summary judgment."
*Milburn v. U.S.*, 734 F.2d 762, 765 (11th Cir. 1984) (*citing*
Fed.R.Civ.P. 12(b)).  As this Court is considering Defendants'
Motions to Dismiss—and not motions for summary judgment—it
would be improper to consider the proffered deposition
testimony.  Therefore, it is recommended that Defendants'
Motion to Strike Plaintiffs' Filing of Deposition Transcripts
(Docs. 74-75) be granted and that Plaintiffs' Motion for Leave
to File Deposition Transcripts (Doc. 82) be denied.

The Court will now take up the Motions for Dismissal
filed by the Defendants (Docs. 45-46, 47-48).  The Court
initially notes that Plaintiffs have conceded that they are

4

not bringing claims against any of the Defendants in their official capacities (Doc. 70, p. 4; Doc. 71, p. 4).

When considering a motion to dismiss, the Court accepts as true the non-moving party's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil Procedure 12(b)(6), "on the basis of a dispositive issue of law." *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)), *cert. denied*, 502 U.S. 810 (1991). The Court notes that "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983).

In their first cause of action, Plaintiffs assert that Defendants Taylor, Greene, and Hawsey "violated the constitutional and/or statutory rights afforded the Plaintiffs under the Fourteenth Amendment and/or 42 U.S.C. § 1983 and/or

42 U.S.C. § 1981(a)" in using excessive force in removing
Plaintiffs from the school gymnasium (Doc. 36, ¶ 24).
Plaintiffs specifically name Taylor and Greene in asserting an
Equal Protection claim for their treatment of Diane Carroll
(*id.* at ¶ 25).[2]  The Carrolls have also asserted that they
received the treatment they did because of their race in
violation of 42 U.S.C. § 1981 (*id.* at ¶ 27).

Plaintiffs claim that they have been denied equal
protection of the law.  "The Equal Protection Clause ensures a
right to be free from intentional discrimination based upon
race." *Williams v. Consolidated City of Jacksonville*, 341
F.3d 1261, 1268 (11th Cir. 2003).  It "requires that the
government treat similarly situated persons in a similar
manner." *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334,
1337 (11th 2002) (citing U.S. Const. Amend. XIV, § 1).  In
*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the U.S.
Supreme Court stated the following:

Our cases have recognized successful

---

[2]The complaint states that "Plaintiffs were denied equal
protection" (Doc. 36, ¶ 25).  The specific allegation,
however, is that Diane Carroll was "singled out" (*id.*).  There
is no allegation that Morris Carroll was "singled out;"
rather, he "followed his wife" after she had been "singled
out" which indicates that he inserted himself into the
situation.  The Court does not understand this language to
assert an Equal Protection claim on Morris Carroll's behalf.

> equal protection claims brought by a "class
> of one," where the plaintiff alleges that
> []he has been intentionally treated
> differently from others similarly situated
> and that there is no rational basis for the
> difference in treatment. *See Sioux City
> Bridge Co. v. Dakota County,* 260 U.S. 441
> [] (1923); *Allegheny Pittsburgh Coal Co. v.
> Commission of Webster Cty.,* 488 U.S. 336 []
> (1989).  In so doing, we have explained
> that "'[t]he purpose of the equal
> protection clause of the Fourteenth
> Amendment is to secure every person within
> the State's jurisdiction against
> intentional and arbitrary discrimination,
> whether occasioned by express terms of a
> statute or by its improper execution
> through duly constituted agents.'"  *Sioux
> City Bridge Co., supra*, at 445 [] (quoting
> *Sunday Lake Iron Co. v. Township of
> Wakefield,* 247 U.S. 350, 352 [] (1918)).

*Olech*, 528 U.S. at 564.[3]  It is further noted that "a

plaintiff must show a purpose or intent to discriminate in

proving an equal protection violation based on racial

discrimination".  *Williams,* 341 F.3d at 1269 (quoting *Brown v.

City of Fort Lauderdale*, 923 F.2d 1474, 1478 n.8 (11th Cir.

1991)).

Plaintiffs have asserted that Defendants Taylor and

Greene physically abused them because of racial animus (Doc.

36, ¶¶ 25-26).  Factually, the Carrolls have asserted that

_____

[3]This Court recognizes that *Olech* is not factually "on
point" as it concerns a landowner's dispute with a
municipality over an easement.  Nevertheless, the Court finds
it instructive.

they are White and that Taylor and Greene are Black and that it was this difference which led to their abuse (*id.* at ¶¶ 7-8).  However, the Amended Complaint does not specifically state that there were other "similarly situated" people who were treated differently by Taylor and Greene.  The Court, even construing the pleadings in a light most favorable to Plaintiffs, finds that the factual assertions in the Amended Complaint do not meet the minimal threshold for stating an Equal Protection claim against Defendants Greene and Taylor.

The Court further notes that Plaintiffs have failed to assert any facts against Defendant Hawsey which would support an Equal Protection claim (*see* Doc. 36, ¶¶ 24-28).  Because Plaintiffs have not satisfied the "heightened pleading requirements for civil rights cases," *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1367 (11th Cir. 1998)), the Court finds that the Carrolls' assertion that they were denied Equal Protection is vague and conclusory and should be dismissed as insufficient as to Defendant Hawsey. *Gonzalez*, 325 F.3d at 1235 (citing *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)).

In summary, the Carrolls have not set out or pled facts which would support an Equal Protection claim against any of

the Defendants.  Therefore, it is recommended that Defendants'
Motions to Dismiss be granted on the Equal Protection claim.

Plaintiffs have also claimed that all of the Defendants
violated their rights under § 1981(a) which states the
following:

> All persons within the jurisdiction of
> the United States shall have the same right
> in every State and Territory to make and
> enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit
> of all laws and proceedings for the
> security of persons and property as is
> enjoyed by white citizens, and shall be
> subject to like punishment, pains,
> penalties, taxes, licenses, and exactions
> of every kind, and to no other.

42 U.S.C. § 1981(a).  Defendants Taylor and Greene do not seek
to have this claim against them dismissed (Doc. 25, p. 1).

Defendant Hawsey does seek to have this claim against him
dismissed (Doc. 47, p. 2).  As in the Equal Protection claim,
the Court finds that Plaintiffs have failed to alleged or
plead how they were treated any differently than anyone else.
Again, the factual allegations do not support a claim against
Defendant Hawsey.  Therefore, it is recommended that this
claim be dismissed as to Hawsey.

Plaintiffs also assert a claim of excessive force against
all of the Defendants.  Taylor and Greene do not seek to have
this claim dismissed (Doc. 45, p. 1).  Defendant Hawsey does

seek dismissal of this claim (Doc. 47).  The Court notes that the factual allegations concerning the arrest do not include any general—much less specific—allegations against Hawsey or of his personal involvement in this alleged violation (Doc. 36, ¶¶ 6-16).  Therefore, the excessive force claim should be dismissed against Hawsey.

In their third cause of action, Plaintiffs raise a claim against Hawsey for the negligent supervision of Taylor and Greene (Doc. 36, ¶¶ 35-41).  The Carrolls more specifically claim that Hawsey "knew, or should have known by virtue of past conduct, that Taylor and/or Greene had propensity for use of excessive force and had made false charges against others" (*id.* at ¶ 36).  Plaintiffs also state that Hawsey knew that the deputies "had a history of unlawful acts [which] he took no action to stop" (*id.* at ¶ 37).  The Carrolls assert that Hawsey "could have discovered these discrepancies [in Greene's work history] had he conducted a minor background investigation" (*id.* at ¶ 40).

In *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), the Eleventh Circuit Court of Appeals stated the following about supervisory authority:

> It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts

10

of their subordinates "on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted).  "Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).  In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights."  *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991) (citing *Zatler v. Wainwright,* 802 F.2d 397 (11th Cir. 1986)).

*Hartley*, 193 F.3d at 1269.

The U.S. Supreme Court, in *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997), has discussed the claim raised herein, though in the context of municipal liability as opposed to liability of a sheriff, and stated the following:

11

> "[D]eliberate indifference" is a stringent
> standard of fault, requiring proof that a
> municipal actor disregarded a known or
> obvious consequence of his action. . . .
> the risk from a single instance of
> inadequate screening of an applicant's
> background is not "obvious" in the
> abstract; rather, it depends upon the
> background of the applicant.  A lack of
> scrutiny may increase the likelihood that
> an unfit officer will be hired, and that
> the unfit officer will, when placed in a
> particular position to affect the rights of
> citizens, act improperly.  But that is only
> a generalized showing of risk.  The fact
> that inadequate scrutiny of an applicant's
> background would make a violation of rights
> more likely cannot alone give rise to an
> inference that a policymaker's failure to
> scrutinize the record of a particular
> applicant produced a specific
> constitutional violation.  After all, a
> full screening of an applicant's background
> might reveal no cause for concern at all;
> if so, a hiring official who failed to
> scrutinize the applicant's background
> cannot be said to have consciously
> disregarded an obvious risk that the
> officer would subsequently inflict a
> particular constitutional injury.

*Brown*, 520 U.S. at 410-411.  The Court further stated that

> [a] plaintiff must demonstrate that a
> municipal decision reflects deliberate
> indifference to the risk that a violation
> of a particular constitutional or statutory
> right will follow the decision.  Only where
> adequate scrutiny of an applicant's
> background would lead a reasonable
> policymaker to conclude that the plainly
> obvious consequence of the decision to hire
> the applicant would be the deprivation of a
> third party's federally protected right can

> the official's failure to adequately
> scrutinize the applicant's background
> constitute "deliberate indifference."

*Brown*, 520 U.S. at 411.  In other words,

> a finding of culpability simply cannot
> depend on the mere probability that any
> officer inadequately screened will inflict
> any constitutional injury.  Rather, it must
> depend on a finding that this officer was
> highly likely to inflict the particular
> injury suffered by the plaintiff.  The
> connection between the background of the
> particular applicant and the specific
> constitutional violation alleged must be
> strong.

*Brown*, 520 U.S. at 412.  Before proceeding further, the Court notes that Plaintiffs' assertion in this cause of action is that Hawsey was "negligent" (Doc. 36, p. 7, "Third Cause of Action Subtitle (Negligent Supervision)"); as *Brown* noted, the standard for this claim is deliberate indifference and not negligence.  Nevertheless, Plaintiffs have, in the plain language making out the claim, asserted that Hawsey knew that his deputies had a propensity to use excessive force in carrying out their duties and that his disregard of this propensity, in hiring them, led to the physical and mental abuse that they suffered.  Though the Carrolls have not yet proven the facts asserted, the Court accepts their assertions as true.  *Hishon*, 467 U.S. at 73.  The Court understands

13

Plaintiff's assertions to state a claim against Hawsey as recognized in *Brown*.  It is recommended that Hawsey's Motion to Dismiss be denied as to this claim.

The Court notes that the Defendants, in their individual capacities, have all asserted the defense of qualified immunity (Doc. 46, pp. 6-16; Doc. 48, pp. 14-21).  The Court notes, initially, that "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'  The privilege is 'an *immunity from suit* rather than a mere defense to liability.'"  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in original).  To that end, the issue of qualified immunity should be determined early in the litigation process.  *Saucier*, 533 U.S. at 201 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curium*)).

"To receive qualified immunity, the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  The Court finds that Defendant Hawsey was acting within his discretionary authority in supervising Defendants

Taylor and Greene as Conecuh County Sheriff.[4]

Hawsey has raised the qualified immunity defense.   When confronted with a qualified immunity issue, a court should first answer the question:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry." *Saucier*, 533 U.S. 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  The *Saucier* Court went on to state that

> [i]f no constitutional right would have
> been violated were the allegations
> established, there is no necessity for
> further inquiries concerning qualified
> immunity.  On the other hand, if a
> violation could be made out on a favorable
> view of the parties' submissions, the next,
> sequential step is to ask whether the right
> was clearly established.  This inquiry, it
> is vital to note, must be undertaken in
> light of the specific context of the case,
> not as a broad general proposition.

*Saucier*, 533 U.S. 201.

The Court has already determined that Plaintiffs have properly asserted a constitutional violation by Hawsey.  The next step is to determine "whether the right was clearly

---

[4]It is unnecessary to determine if Defendants Taylor and Greene were acting within the scope of their discretionary duty in this Report and Recommendation.

established." *Saucier*, 533 U.S. 201. *Brown*, discussed earlier, appears to clearly establish a claim for liability when a claimant can show that a sheriff knowingly hired a deputy with a known propensity for using excessive force in arresting private citizens and the deputy, again, uses excessive force in arresting a citizen. The Court cannot say that the facts here are materially distinguishable from the facts of *Brown* except, as noted earlier, the claim there was against the County and not the Sheriff.

With that conclusion, Defendant Hawsey is not entitled to the qualified immunity defense on the "negligent supervision" claim. Therefore, it is recommended that Hawsey's claim of qualified immunity on the negligent supervision claim be denied.

In their fourth cause of action, Plaintiffs allege a conspiracy among all of the Defendants to deprive Morris Carroll of constitutional rights. They more specifically state that Defendants falsely charged him with public intoxication and obstruction of government operations, causing him mental and emotional distress (Doc. 36, ¶¶ 43-44).

Defendants have questioned whether Diane Carroll has standing to bring this claim. The U.S. Supreme Court has stated that "the standing question is whether the plaintiff

16

has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "[T]he plaintiff [] must allege a distinct and palpable injury to himself" and "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth,* 422 U.S. at 501, 499.

The Court notes that this cause of action alleges, with regard to Diane Carroll, only that she was injured because of the conspiracy (*see* Doc. 36, ¶¶ 42-44). She does not state, however, how her injuries are separate and distinct from the injuries of her husband or those she suffered as a result of the other violations visited upon her. Therefore, the Court finds that Plaintiff Diane Carroll lacks standing to obtain relief under 42 U.S.C. § 1983 in her claim of conspiracy against the Defendants. *See Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999), *cert. denied*, 529 U.S. 1055 (2000). Any such claim, to the extent that it is raised, should be dismissed.

The Court notes that a cause of action for conspiracy can exist in a § 1983 action. *Bendiburg v. Dempsey*, 909 F.2d 463,

17

468 (11th Cir. 1990), *cert. denied*, 500 U.S. 932 (1991).  The
*Bendiburg* Court restated the requirements for bringing such a
claim:  "The plaintiff attempting to prove such a conspiracy
must show that the parties 'reached an understanding' to deny
the plaintiff his or her rights.  The conspiratorial acts must
impinge upon the federal right; the plaintiff must prove an
actionable wrong to support the conspiracy." *Bendiburg*, 909
F.2d at 468 (citations omitted).

Before proceeding to the specific facts in this action,
the Court notes that the Defendants have claimed a defense
under *Heck v. Humphrey*, 512 U.S. 477 (1994), in which the U.S.
Supreme Court held the following:

> in order to recover damages for allegedly
> unconstitutional conviction or
> imprisonment, or for other harm caused by
> actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or
> sentence has been reversed on direct
> appeal, expunged by executive order,
> declared invalid by a state tribunal
> authorized to make such determination, or
> called into question by a federal court's
> issuance of a writ of habeas corpus, 28
> U.S.C. § 2254. . . . the district court
> must consider whether a judgment in favor
> of the plaintiff would necessarily imply
> the invalidity of his conviction or
> sentence; if it would, the complaint must
> be dismissed unless the plaintiff can
> demonstrate that the conviction or sentence
> has already been invalidated.  But if the
> district court determines that the

18

> plaintiff's action, even if successful,
> will not demonstrate the invalidity of any
> outstanding criminal judgment against the
> plaintiff, the action should be allowed to
> proceed.

*Heck*, 512 U.S. at 486-87.  Defendants have argued that a finding by this Court of conspiracy would undermine Morris Carroll's disorderly conduct conviction (Doc. 46, pp. 14-15; Doc. 48, pp. 14; Doc. 77, pp. 14-15).

In looking at the court records regarding Morris Carroll's conviction, the Court notes that he was originally charged with public intoxication; however, the charge was amended to include disorderly conduct on the same day that he pled to that charge (Doc. 46, Exhibit A).  Even though Plaintiff argues that he is not challenging the disorderly conduct conviction, the Court finds that allowing the "conspiracy to falsely charge" claim to go forward could lead to the undermining of the disorderly conduct conviction; this would lead to the situation contemplated in *Heck*.  At the very least, the Court cannot say that Plaintiff's success on this claim would not undermine the disorderly conduct conviction. Therefore, this Court must, under *Heck*, find that Plaintiff Morris Carroll's fourth cause of action does not state a claim and must dismiss it as to all parties.

The Court will finally address Plaintiffs' claims of

assault and battery, state law claims, raised in the second cause of action.  The Carrolls more specifically assert that Greene and Taylor, in arresting them, caused them to sustain physical injuries and medical expense (Doc. 36, ¶¶ 31-32); Plaintiffs have brought this claim against Hawsey, stating that Greene and Taylor are his agents (*id.* at ¶ 33).  The Carrolls seek compensatory and punitive damages relief on this claim.

The Court notes that all Defendants first assert that they are absolutely immune from these claims in their positions as State officers, in both their official and individual capacities (Doc. 46, 16-17; Doc. 48, pp. 21-22). The Court notes the following:

> Alabama grants sovereign immunity to its state executive officers pursuant to Article I, Section 14 of the Alabama Constitution of 1901.  Section 14 states that "the State of Alabama shall never be made a defendant in any court of law or equity."  Under Alabama law, both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit under Section 14.[5]

---

[5]"Alabama law affords § 14 immunity to state officers sued in both their official and individual capacities.  *See Phillips v. Thomas*, 555 So.2d 81, 83 (Ala. 1989). *Gill v. Sewell*, 356 So.2d 1196, 1198 (Ala. 1978)." *Tinney v. Shores*, 77 F.3d 378, 383 n.3 (11th 1996) (footnote in original).

*Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996).  The Court notes that Plaintiffs have argued that this immunity is not available when the State official "acts willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law" (Doc. 70, p. 16) (quoting *Phillips v. Thomas*, 555 So.2d 81, 83 (Ala. 1989)).

Defendants have rebutted this argument, however, with this language offered by the Alabama Supreme Court:  "In *Cranman*, although we restated the rule governing State-agent immunity, we did not address the State immunity afforded to sheriffs and deputy sheriffs for actions taken while working in the line and scope of their employment, and we did not overrule *Ex parte Purvis*, 689 So.2d 794 (Ala. 1996).  *Ex parte Cranman*, 792 So.2d 392, 396 n.2 (Ala. 2000)."  *Ex parte Haralson*, 853 So.2d 928, 931, n.1 (Ala. 2003).

In *Purvis*, the Alabama Supreme Court held that a Sheriff and Deputy were immune, under Article 1, § 14 of the Alabama Constitution, from a claim for money damages in which it was alleged that they had "intentionally failed to follow proper procedures" in shooting and causing permanent injury to a man they were pursuing.  *Purvis*, 689 So.2d at 796.  The *Purvis* Court specifically referenced the exceptions Plaintiffs have

asserted in *Phillips* in reaching its decision. *Purvis*, 662 So.2d at 795-96.

In this cause of action, Plaintiffs seek monetary, but no injunctive relief (Doc. 36, §§ 30-33). The Court understands *Purvis*, *Tinney*, and *Haralson* to uphold immunity for Defendants Greene, Taylor, and Hawsey, in their official and individual capacities, in this claim of assault and battery brought by the Carrolls. Therefore, the claim for assault and battery should be dismissed as Defendants all have absolute immunity on this claim as framed.

After consideration of all pleadings of record, it is recommended, in summary, that Defendants' Motion to Strike Plaintiffs' Filing of Deposition Transcripts (Docs. 74-75) be granted and that Plaintiffs' Motion for Leave to File Deposition Transcripts (Doc. 82) be denied. Furthermore, it is recommended that the Defendants Taylor and Greene's Motion to Dismiss should be fully granted which means dismissing the following claims: the Equal Protection claim in the first cause of action; the assault and battery claim in the second cause of action; and the claim of conspiracy asserted in the fourth cause of action (Doc. 45). The dismissal of these claims would mean that the only claims remaining against Defendants Taylor and Greene are the claim for the use of

excessive force and the 1981(a) claim.  It is further
recommended that Defendant Hawsey's Motion to Dismiss should
be granted as to the following claims:  the Equal Protection
claim, the excessive force claim, and the § 1981(a) claim
asserted in the first cause of action; the assault and battery
claim in the second cause of action; and the claim of
conspiracy asserted in the fourth cause of action (Doc. 47).
It is further recommended that Defendant Hawsey's Motion to
Dismiss be denied as to the negligent supervision claim; it is
also recommended that Hawsey is not entitled to qualified
immunity as to the claim of negligent supervision (Doc. 47).
If this recommendation is accepted as the opinion of the
Court, the only remaining claim against Defendant Hawsey would
be the claim of negligent supervision.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **Objection**.  Any party who objects to this recommendation
or anything in it must, within ten days of the date of service
of this document, file specific written objections with the
clerk of court.  Failure to do so will bar a <u>de</u> <u>novo</u>
determination by the district judge of anything in the
recommendation and will bar an attack, on appeal, of the
factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. §
636(b)(1)©; *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.
1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B,
1982)(<u>en</u> <u>banc</u>).  The procedure for challenging the findings
and recommendations of the magistrate judge is set out in more
detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 27th day of January, 2005.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE


24